Welcome to the Fifth Circuit. I am Judge Duncan, to my left is Judge Oldham, and to my right is the well-known Judge Jolly. It is a privilege to welcome you in person to the court, and we appreciate your attendance. We look forward to the arguments today. We'll hear arguments in three cases, and I will call the first case, number 18-40790, United States of America v. Julio Cesar Cardenas. Mr. Gordon and Mr. Smith, are you all ready? Mr. Gordon, you may proceed. I assume you know how our lighting works, but it's self-explanatory. You'll do great. May I please the court? My name is Jeremy Gordon, and I represent the appellant in this case, Mr. Julio Cardenas. Mr. Cardenas filed a 2255 motion, and then after that, an amended 2255 motion in the Southern District of Texas. His 2255 motion was dismissed as untimely, because it was filed after the one-year deadline. The district court determined that Mr. Cardenas' equitable tolling claim was not well-founded, and that Mr. Cardenas' claims, and also that Mr. Cardenas' letters to the court, did not constitute, or should not be construed as personal motions. In my time before the court, I will discuss that Mr. Cardenas did pursue diligently his 2255 rights in order to establish equitable tolling. I will also explain that his lawyer's active misrepresentation constituted extraordinary circumstances for the purpose of equitable tolling, and that in the alternative, the district court failed and erred by not determining that his numerous letters to the court during the statute of limitations period constituted a pro se 2255. All right, so for the first issue, Mr. Cardenas was, in fact, actively pursuing his rights. When we talk about actively pursuing his rights, we know that it's not a matter of maximum foreseeable diligence, but rather that it's a matter of reasonable diligence, and we know from the Holland case, and we know from the Palacios case, that reasonable diligence is not about mechanical rules, but instead it's about a fact-intensive inquiry, so that as we look at the facts of what happened here, we can see that Mr. Cardenas engaged in reasonable diligence. Mr. Palacios, I'm sorry, Mr. Cardenas sent numerous letters to the court within the statute of limitations period. Some of those letters, some of those documents were letters to the court where he was actually writing letters to his lawyer who had been appointed to him on a 3582 matter, and he also, for lack of a better term, cc'd the court. He wrote a letter to the court, he wrote a letter to the lawyer, and then he also cc'd the court. Other letters that he wrote said to the court, essentially speaking, can you help me, I can't, I'm trying to get a hold of my 3582 lawyer, I can't get a hold of them. The 3582 lawyer was appointed, he said that I can't get a hold of them, and in some of those letters, in one letter in particular, he wrote information about the underlying conflict of interest that he had with the prosecutor on the case, under the facts of the case, the underlying prosecutor on the case, and Mr. Palacios, I'm sorry, and Mr. Cardenas. Now I was kind of interested in, did they actually get into a fight? It was a, I wouldn't say that it was like a fistfight, not like trading blows, but it was that it was like an altercation, like a slap, and some jaw jacking, but not necessarily like, not a boxing match per se, but it was definitely like a, it was noticeable, it was noticeable, I believe that he was fighting. Where did that, where did that transpire? It transpired in a a drinking establishment bar. The, so, so as the, so in the past, 17, was he an assistant United States attorney? Is that, at the, was he an assistant United States attorney at that time? No, your honor. He was a, the prosecutor, whose name is Jody Young, was a state-level prosecutor in, in Brownsville. State level, yes, yes, your honor. State court. State court. So it was in, it was in Brownsville. There had been a, there had been a jury trial in the state court where Mr. Cardenas was the, the accused person. There was a hung jury. The jury was unable to reach a verdict. Then, near that time, Mr. Cardenas was out celebrating, presumably, and then saw the prosecutor and saw other law enforcement members at the same place. Brownsville, I think, is small enough to where this could happen. And, and an altercation happened. Feelings were high. Feelings were high. I mean, I guess in the irrelevant matter at this moment, I mean, I was just going to ask you how the prosecutor and the defendant got into a fistfight. Well, um. I don't believe, I mean, you don't have to take a turn telling me that. Well, it's, it's, I think it's enough to say that feelings were high after, after what had transpired, after everything that had transpired. I mean, I, we're not going to have anything like that in this, in this argument, of course. Absolutely not. That's a joke. But, um, let me ask you this. It seems that your, one of your key arguments is you, you want the court, you say the court abused its discretion in failing to construe a letter or letters as a 2255. Is that correct? Yes, Your Honor. Okay. Could you point me to, what are the specific letters that you feel you believe the court should have construed as a 2255? All right. So, there are two. Um, one of them is Record on Appeal 4602. And it is a, um, it is a request for appointment of counsel with regards to what Mr. Cardenas believed was a Johnson claim. He believed he had a claim under Johnson v. United States with regards to the Armed Career Criminal Act. Um, and not only was it a request for counsel, but as I was reading it last night slash this morning, it ended up, it got substantially into the weeds about whether or not, um, Mr. Cardenas was, uh, what was a crime of violence. Okay. So, that has to do with Johnson, but of course the underlying 2255 claim that you want to press has to do with the conflict of interest, right? Yes, Your Honor. So, so two things about that. So, first of all, um, I also, also Record on Appeal 4563, which was the January 25th, um, submission, um, has, um, several attachments in it. And in those attachments, um, it's a, so again, it's a letter to, it's an order to the court asking for help to communicate with his, um, lawyer. Um, and in one of those attachments, it also goes into the conflict of interest issue. And in that letter, it says that this is a violation of my Fifth and Sixth Amendment rights. In the letter. And so your, is, is your argument that the district court abused its discretion by not construing that letter as a 2255 motion? I would, my, yes, Your Honor, that, that as well as, that as well as the, the, the other one, Record of Appeal 4602. And I understand that that is, um, I understand that that is about a Johnson claim as opposed to what, um, what was in, um, Record on Appeal 4563. But I would submit that when it comes to a pro se person submitting their own letters and submitting their own objects, when we talk about them being construed as a 2255 motion, if he's making a claim about Johnson, you know, in a letter, then it, then even if it's, then, then because of the wide level of latitude that we give, um, these sorts, that we give pro se motions, um, then, then even if he's, even if he personally was off the mark, it's my submission that, that, that it still could be construed as a 2255 motion. All right. What's your best precedent from our court that supports that argument? All right. So when, so I don't have any, I don't have any precedent on the fact that he is wrong, about the fact that he could be wrong, but, but when I look at these, when I look at United States v. Flores, which was from the Fifth Circuit, um, where it says that although it's an artfully drafted, it's stated enough, um, so that it could be a little more construed as a 2255 motion, um, in the Elam case, the Elam case, which is 930 F3D 406, and the Penn site is, um, 410, where we look at, we have frequently instructed district courts to determine the true nature of a pleading by a plaintiff. So, um, it's not a matter of, um, it's not a matter of what was, it's not a matter of what's at the top of it. The question is, what was in the substance, and my submission to the court would be that, that when he put in there, that the conflict of interest that he had with the prosecutor was violation of his Fifth and Sixth Amendment rights. Then when we look at the, when we look at the substance, not the label, that is enough for the, for the district court to construe it as a 2255. And that would have been within the year, within the limitations period? Yes, Your Honor. Yes, Your Honor, because, because it was a letter to, it was a letter to, it was a letter to his lawyer, I believe it was a letter to his lawyer, that he cc'd the court, it was inside the statute of limitations, um, and, um, and, and it mentioned, it mentioned that specific issue on the, on the conflict of interest, what he believed to be a conflict of interest. What is the, uh, the statute of limitations, expiration of the statute of limitations on this claim? What was the date of it, do you remember? So, so the date was in October. Um, Mr., Mr. Cardenas was, so it was in October of 2018, I'm sorry, it was in October of 2016 when Mr. Cardenas believed it to be, um, because he had filed for Supreme Court surcharge, and, um, and the Supreme Court denied it, and then a motion for rehearing was, um, one, so the one-year limitation expired in October of 2016? Yes, yes, Your Honor. How many lifestones is this individual serving right now? He is serving one life sentence, but he's, but he's serving it at least two different ways, because he had, um, he had 851 enhancements, um, so he was looking at a mandatory life based on the 851 information, and he had, um, and he also had a guideline range of, I believe, 44, um, and a criminal history category of six, so then he was serving life, but he was serving. The court imposed only one life sentence on him? That's, that, I believe so, yes, Your Honor. Counsel. It's not going to be a whole lot of help to him if he went astray, is it? We, we, we welcome the chance to go back down to the district court and, and make, um, substantive objections to the, to the, the, the conflict of interest, um, issue. We welcome the chance to go back down to district court, make substantive, substantive objections to that issue, and, and possibly get him back into court, um, and, and work out something else with, with the government. In other words, the conflict of interest claim does help you if you're successful in setting aside his entire conviction, is that what you're saying? That would be our argument, and that would be what we would submit to the court, um, and, and we would submit that, um, and into, and in all candor, um, the, the district, the magistrate's report and recommendations did say this was untimely, and even if it was, even if it was timely, it's meritless, but we welcome a chance to go back down there. I understand the claims that you are making, uh, that, that told the statute or that were within the statutory period do not relate to conflicts of interest. Well, so, so, so. It relates to Johnson, the application of Johnson to his sentence, does it not? So, so, so there, so there are two claims. So, so there are the, the claims that are in the letter, the Johnson claims, um, and then there's also the conflict of interest claims. However, if the district court had a, that's construed as a 2255. He never said anything about the conflict of interest claim in his correspondence with the court that was within the one-year frame, time frame, did he? He did not write a direct letter to the court, but he wrote a letter to his lawyer, and he carbon copied the court, and in that, it had that in it, and that is, that is, that is the 4563. That's the record on appeal, 4563. It's December 29th, 2015, and I'm, I wanted to ask you about that very letter. So, I'm, I'm looking at it. Um, this obviously, it's addressed to Jaime Diaz, his attorney. Have you ever found a case, I'm not aware of one, but I'm curious if you have one, that says a letter, even carbon copying a court on a letter between a prisoner and his client could ever constitute any sort of filing, let alone a 2255 motion? It's certainly not what happened at Elam. I have not found that case. I have yet to find that case. So, so obviously, there's no request for relief here. He's just asking his attorney, he says, I got into this to conduct his duties as a prosecutor in any of my cases. Can you please advise me if this is the case? Right? So, it's a question to his lawyer seeking legal advice, and I'm, I'm curious how, how we could recharacterize that as a 2255 motion. Um, well, I have, I have not found a direct case, a direct case that's on point, that says, if you write a letter, and you cc the court, then you, then that can be construed. But I would, I would go back to the Elam case, which indicates that, um, we have frequently instructed district court to determine the true nature of a pleading by its substance, not its label. And the impact of that is that in a situation where a person has a light sentence, um, and in a situation where a person has, um, when, where a person, um, is, is a prolific violent, then it should have been something that was construed as a 2255, if for no other reason than to protect his rights in a situation where he's serving a light sentence. Can I ask one more question? I realize your time's expired. Um, in Holland versus Florida, the prisoner, like Mr. Cardenas, was educating his attorney, and it's quite remarkable to me when, when the prisoners are teaching the rules of post-conviction and AEDPA's statute of limitations to their attorneys. Um, and so it's quite a credit to Mr. Cardenas to have done that. But in Holland versus Florida, similarly, as the attorney, as the prisoner is educating the lawyer on when AEDPA's limitations period starts and stops under the tolling provisions, the day he finds out about the Florida Supreme Court's finality on direct appeal that would trigger the start, the start of the limitations period, the day it happens, the types the pleading, follows it the next day. And that's why Justice Breyer writing for the court in Holland says that's obviously due diligence. When did Mr. Cardenas, after he realized that October 2016 had come and gone, when did he file his protective 2255 motion? Okay. So, so, so Mr. Cardenas did not file a protective 2255 in the spirit of, of Holland and looking Bill and, and Rita. Um, he did not file the same sort of object. He did not file his own person because at that point he already had a lawyer. So, so, so, so, so he hires the attorney Kent and then attorney, and then he reaches out to attorney Kent and says, are you sure, um, that this is the right date? Um, because my information and my studying, um, the law library is big. My information, my setting leads me to believe that this, that, that October is the right date. And the attorney Kent says, no, I've got it. You know, what I'm saying is right. And, and it was when the prosecutor on the case filed the government's response with, with what was referred to as a wall of unbroken case law that, um, Mr., that, um, that Mr. Kent said, oh no, um, and then reached back out to him. So then the time to file, so he would have already, so at that point he would have been out of time because, um, because he trusted the lawyer and because the lawyer's misrepresentations to him of what the right date was. I believe Judge Oldham though, I don't mean to interrupt you, but Judge Oldham I believe asked when did he make the filing, uh, the protective filing once he realized that the deadline had run and the attorney had misunderstood, uh, the rules, uh, for the, for the statute of limitations. Because Mr. Cardenas clearly knew that October 2016 was his day. He said it over and over again. It's October 2016. It's just like Mr. Holland. But Mr. Holland filed the day after he realized that he got notice that the Florida Supreme Court had made his, his conviction final on direct appeal. So I'm just, to Judge Duncan's question, I guess mine as well, is there any sort of protective filing like there was in Holland? I, I take it the answer's no. I would not say that there was a protective filing like there was in Holland. There was what he filed with, what Mr. Kent filed and he knows what we filed. Yeah. All right. Thank you, counsel. I believe you have some time for rebuttal. Thank you, Judge Duncan. Mr. Smith. Good morning. May it please the court, Jason Smith for the United States. Uh, I want to clear up a couple of things about the record right off the bat. First off, going to Judge Oldham's question and to Mr. Gordon's response, at the time the 2255 statute of limitations ran in October of 2016 when the date passed, Mr. Cardenas was not represented in the district court by a lawyer. He was pro se up until November 18th of 2016 when Mr. Kent first files his motion to appear and could have filed, whether you want to call it a protective pleading, a skeletal pleading, something that said, uh, my conviction should be set aside, the prosecutor had a vendetta against me and my lawyer should have done something about it. That would have likely been enough under the liberal construction of pro se pleadings to make out his 2255 claim. He was, Judge Oldham pointed out, certainly on notice of the deadline. He knew that. And in these circumstances, the burden is on the pro se defendant to file timely, even if they're receiving ineffective assistance of counsel from their post conviction counsel. So, it would have been simple for Mr. Cardenas to do one of two things. He either could have filed that skeletal pleading or he just could have told Mr. Kent, hey, I know you think December is the deadline, but I'm pretty sure it's October, so file before the October deadline. And that's one of the facts that this court and the Supreme Court has looked at in Palacios and Holland to see whether a defendant has engaged in appropriate diligence. And here Mr. Cardenas didn't do either of those simple things. I mean, it certainly seems true that he didn't raise this question of conflict of interest, but looking through this and this motion for appointment of counsel does indicate that he challenged his sentence pretty clearly. So that with respect to the sentence itself and the application of the crime of violence and the Johnson issue, that he was trying to raise that issue and made it pretty clear to the court that he could raise that issue under the Elam case. There are a couple of issues with that, Your Honor. The first is that under this court's decision in Lookingville, a motion for appointment of counsel does not hold the statute of limitations. A motion for appointment of counsel... I understand that. I understand the motion doesn't unless you construe the motion irrespective of the title of the motion, but look to the substance of it. In the second paragraph, he clearly alleges that he is challenging the sentence under Johnson, the enhancement of the sentence under Johnson. And, I mean, it seems to me that that aspect of it would fall within Elam fairly with some clarity, but it doesn't do him a whole lot of good because he's, get that sentence reduced a little bit, he's still there for a long, long time. Mr. Speaker, Your Honor, I don't know under Lookingville that it should properly be of the claims that he ultimately made, even if... Okay, I mean, I agree with that. I mean, I think it's been pointed out in the relation back doctrine, it would not take in account the, it doesn't, it doesn't save his motion, it doesn't save his claim that relates to conflict of interest, but it does seem to me to challenge effectively, at least under Elam, the application of the Johnson issue, the... It might, Your Honor, but he never pursued a Johnson claim. If he had intended for that to be construed as a 2255 raising Johnson, he waived whatever right he had to pursue a Johnson claim by failing to brief it in the counsel 2255. I think they argued that. Correct, Your Honor, he never argued it. I mean, he's interested only in getting the conviction itself set aside. Correct, Your Honor, and the magistrate judge went on to assess the merits of that claim and found it to be meritless and part frivolous, ultimately meritless. The district court didn't pass on that because it just denied the claim as untimely, but the magistrate judge looked at it and found it to be meritless. I don't want to, I know the court had questions because it raises one's curiosity when you hear about a supposed fight between a prosecutor and a defendant. Well, it raised Judge Johnley's curiosity. I don't want to fall down that rabbit hole too much. The government, in its response, we denied that there was a fight. There is nothing in the record other than Mr. Cardenas' affidavit to support the idea that there was a fight, and the magistrate judge pointed out some important atmospheric facts about that. Supposedly, that fight happened in 1995 when the current AUSA was then a state prosecutor. The prosecution that Mr. Cardenas is now seeking to set aside based on that supposed fight happened some 20 some odd years later, and as the magistrate judge pointed out, there was a retrial in that state case, and Mr. Cardenas didn't seek to have that same state prosecutor disqualified in the retrial in the state for this supposed conflict of interest a matter of months after this fight supposedly happened, all of which casts a suspicion on his current claim that there is this grave constitutional error that affects his constitutional rights. I want to come back briefly to the issue of reconstruing Mr. Cardenas' submissions to the district court as a timely 2255 somehow raising this supposed conflict of interest claim, and again, as Judge Jolly pointed out, it would not be a timely Johnson claim. It would still be untimely. The conflict of interest claim would still be untimely because it was filed in December. Right. We're no longer talking about the motion for appointment of counsel. Correct. Because that one, as Judge Jolly has pointed out, wouldn't do Mr. Cardenas any good because a conflict of interest claim would not relate back to a timely Johnson claim. It would still be untimely. The conflict of interest claim would still be untimely because it was filed in December. I can understand why he would want to point to that document because it sounds like it's titled similarly to the document in Elam. Which document in Elam? No, I'm sorry, the motion for appointment of counsel. Correct, Your Honor. But it sounds like it. I don't know if it's the same kind of document. That's what the title is. It's certainly more sparse than the one that's described in Elam, but at the end of the day, it just, it can't help Mr. Cardenas here because it's a completely different claim. A Johnson claim has absolutely nothing to do with the conflict of interest and ineffective assistance of counsel claim that Mr. Cardenas ultimately makes. The document at Record on Appeal 4563, the letter to Mr. Cardenas' counsel in the 3582C motion, isn't the kind of thing that under this court's jurisprudence or any court's jurisprudence that I'm aware of, could reasonably be reconstrued as a 2255 motion. It's not directed to the court. It's not seeking any relief. It is asking for advice from Mr. Cardenas' counsel and to establish new case law saying that a district court who is faced with a prolific pro se filer like this, who cc's the lawyer, has to mine through all of that correspondence to the lawyer, look for a potential claim, and then make it for the defendant, is just, number one, unworkable, and number two, inconsistent with the precedent of any court with which I'm aware. I mean, if, assuming that he had preserved the argument that you say he didn't make on appeal, uh, that there was, he has a valid claim to challenge his, the imposition of the summons on the basis of, um, Johnson, the cases have indicated that once he is inside the court, he has a right at that point to amend his 2255 petition. In other words, he has stopped, uh, he's, he stopped the statute of limitations back at the time that he filed this particular claim and that he can then amend his claim to include the conflict of interest. What would be your response to the general suggestion that he has a right to amend his complaint after he has, uh, made it within the statute of limitations at one point? I think it's a little bit less clear than that, Your Honor. If the district court had seen something that could reasonably or should reasonably be, be characterized as a 2255, then under Castro, they would need to give warnings to Mr. Cardenas before doing that. They would have to tell Mr. Cardenas, hey, you filed this document, uh, you labeled it, whatever, but it looks like what you're really going for is a 2255 motion. And unless you tell us otherwise, we will reconstrue it as a 2255 motion that will subject you to various limitations on later 2255s. Uh, so let us know if you don't want us to do that. And if you do want us to do that, feel free to amend with anything else that you think you should include, because if you don't, those things will be time barred. Number one, to the extent that Mr. Cardenas is arguing that if Castro had kicked in, then he would have supplemented to add this other conflict of interest claim, he did not make that argument in the district court. He did not make that argument in his opening brief before this court. He didn't raise that argument until his reply brief appeared. And by doing so, he's waived it. And he is represented by counsel at that point. Correct. Correct. Even if this court were to reach that substantively, it again sets up a speculative and unworkable standard. It is not entirely clear on the record before this court that if the district court had said to Mr. Cardenas, hey, it looks like you're do not construe this document as a 2255 motion, but we're looking at construing your Johnson counsel request as a 2255 motion. Tell us whether you want us to do that. It's not entirely clear that Mr. Cardenas would have gone along with the court recharacterizing that. Even if he did, and again, this is a place where there is no case law for this sort of speculative second or third order of recharacterizing and weaving Castro in sort of approach that Mr. Cardenas is advocating for, even if the court had gone down that road, it's not entirely clear that Mr. Cardenas would have included this particular claim at that time and made it timely. That sort of speculation is just not supported by this court's case law or Supreme Court case law or any other court that I'm aware of. I have a question about this Castro procedure and I take your point that you didn't have a chance to file a brief on this since it didn't come up until the reply. So if you're not prepared to talk about it, that's fine. But the thing I'm puzzling by is that Castro is clearly supposed to, it's supposed to be basically a shield for the prisoner, right? Which is to say, if we recharacterize this thing that you have filed with us, you're going to have other consequences and we want to give you this Castro shield so that you can't, so that you won't lose your rights. You won't lose your ability to file other claims you may have wanted if you were thinking about filing another 2255 within the limitations period, et cetera. It strikes me that Mr. Cardenas' at least reply argument would turn that into an amazing sword in the sense that we could then go back in time, identify a thing that was never characterized as a pleading in the first place, say that triggers 2255, and not only does it make all of this timely, but it gives you a whole other second bite of the apple years after the limitations period has expired to add new claims, query whether they have to relate back or how else we would sort of cabin that doctrine. But I'm curious if you've seen cases or if the United States has a position on how Castro can be used that way, because I confess I've never heard of it before. I've never seen it before either, Your Honor. The United States position is that it would in fact create exactly that problem and that it would not be appropriate to interpret Castro that way. And stepping back, yes, Castro was clearly intended to make sure that pro se defendants were protected when they filed something that they didn't necessarily intend to be a first 2255 motion. For having that reconstrued to be a first 2255 that puts up all those impediments to subsequent filings, Castro was supposed to be a shield to stop that from happening without them having informed consent to that process taking place. And I haven't seen any cases turning it into the kind of sword retroactive possibility for just lumping in a whole bunch of other timely claims that Mr. Cardenas is advocating for. When the district court denied equitable tolling and opted not to re-characterize any of Mr. Cardenas' pro se filings as a timely 2255 motion, it was following this court's precedent, it was following Supreme Court precedent, and it was following very close persuasive authority from the Seventh Circuit. It acted well within its discretion in finding that Mr. Cardenas' 2255 was untimely. And if the court doesn't have any other questions, we'll rest on our briefs and we ask that this court affirm the district court's judgment. Thank you, counsel. Mr. Gordon, you have some rebuttal. While, may I please the court, while it is true that that specific portion of our argument, the Castro argument, if you will, was brought up in our reply to the government's response, we did in our opening brief explain that the district court erred when it failed to construe his filings, generally speaking, as a timely 2255 motion. We did indicate in our original document that several of the things that he made and arguments that he made in the letter that he wrote before the deadline in October were things that could have been changed. So I would submit that it's not an argument that we waived because we waived to get into the specifics of the Castro case. Essentially, you are not interested in trying to set aside his silence based upon the enhancement, but you are interested in setting aside his conviction based upon the context of interest. Yes, Your Honor. Yes, Your Honor, that's correct. Because, because he, because he still is looking at life with regards to his offense, with his offense level in his guideline range. So, so what I'm going to ask at the end of this is to send the case all the way back to the district court. Now then tell me, one, two, three, four, how do you get there given the lateness of his petition? Are you blaming it altogether on the inadequacy of counsel? Or how do you make his petition timely so that it can be acted upon? What is your theory? Your Honor, our theory is that, first of all, the lawyer engaged in an to Mr. Cordinas because he, because Mr. Cordinas had one thing in mind with regards to the date and then the lawyer said, no, no, it's, it's this date, it's this other date. But under our authority, that doesn't get you anything. But, Your Honor, it's our position that that gets us back to equitable tolling with regards to the, with regards to the conflict of interest argument. Well, if you lose on that, do you have another path? We would submit that the, we would submit that the letters, that, that the letter that Mr. Cordinas wrote to his 3582 lawyer, that he cc'd the court to, and the attachment that it had, it explained that there was a, a conflict of interest with it, and that that was a Fifth and Sixth Amendment violation, that that can get, that that can be construed as a 2255 motion, and that would send him back down to, that would send him back down to district court. This is the letter that you referred to at page 4563 of the record? Yes, Your Honor. The letter from his counsel that the court was cc'd on? Yes, Your Honor. And that's, that's the one that you would rely on, that should be recharacterizing of you as a 2255? Yes, Your Honor. If we don't agree with you on that, then you lose. I would like for you to agree with me, but I would, I would, I would, I would, I would— You don't have a fallback position. If we say, no, you're wrong on that, you don't have a fallback position. I would like for you to also look at the, the, the, the motion to appoint counsel with regard to the Johnson issue. I would like for you to. How, how do you, how do you get around that you're not pressing the Johnson issue? Because if he had filed, if the court had construed that as a 2255 motion at the time when he filed it or a few days after, he still is within the statute of limitations. If, if a clerk gets it and shows it to the judge and says, we need to construe this, then the district court judge says, all right, we're going to construe this. We're going to, we're going to write you a letter and then, and you can amend if you want to, you know, but we're going to construe this. I believe that with him serving a sentence of life two different ways. He would say, yes, I'll take it. Yes, I'll, there was a, there was a statement over here by the government. He'll take anything he can get. Yes, your honor. He'll say, yes, I'll take it. And yes, I'll, I'll, I'll take my 2255 and I'll, I'll try anything. I mean, that's why he's, that's why he's such a prolific filer. All I want is to get my toe in the door. That's why he's such a prolific filer, your honor, because he, he just wants to get his toe in the door. He is a fighter. Thank you, counsel. We appreciate your argument and thank you for the well-argued case. The case is under submission. While counsel.